## JORDAN v. HOLZHEIMER.

(Second Division. Nome. August 26, 1922.)

No. 2885.

Venue ☞48—Change of.

The defendant, a resident of Ketchikan, in southeastern Alaska, was appointed district judge and assigned for service in the Second division, with his official headquarters and residence at Nome. When his term of office expired, he shipped his household goods, and sent his family away from Nome, preparatory to returning to his original residence at Ketchikan. Just prior to his departure he was served with summons and complaint in a suit by plaintiff for damages sounding in tort, for slander. The defendant applied for change of venue from Nome to his permanent place of residence at Ketchikan, in the First Division. *Held*, the defendant's permanent residence was in Ketchikan; the action is transitory; that the action is commenced in a place remote from the residence of the defendant, and defendant will be put to unnecessary expense and inconvenience, if required to defend in Nome. Motion to change the place of trial from Nome to Ketchikan granted; the costs to abide the final decision of the case.

This action was commenced on the 9th day of November, 1921, by filing the complaint and the service of the summons on defendant in Nome. It is a civil action for damages, sounding in tort, for slander, and is transitory. A demurrer filed by defendant was overruled. Pending decision on the demurrer, defendant filed a motion for a change of venue on the ground that, if summoned to defend the action in Nome, he "will be put to unnecessary expense and inconvenience." The affidavit in support of said motion shows that defendant's original residence (domicile) was in Ketchikan, in the

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

First division, Alaska, and that he had a temporary resi-
dence in Nome during his term of office as district judge of
the Second division, Alaska.    It also shows his departure
from Nome in November, 1921, and his present residence in
Ketchikan.'  The affidavit states facts showing the alleged in-
convenience and expense, if required to defend the action in
Nome.

Plaintiff by counter affidavit denies the temporary charac-
ter of defendant's residence in Nome, and the domicile of
defendant in Ketchikan, and alleges that defendant qualified as
a voter and did vote while in Nome.   Plaintiff also states that
his witnesses reside in Nome, and that he would be put to
great expense and inconvenience, if a change of venue were
granted.

Defendant filed a supplemental affidavit showing that before
this action was commenced he had shipped his household
goods, library, and personal effects to Seattle (which is on the
way to Ketchikan).

Plaintiff, in opposition to the motion, urges (1) that the mo-
tion is premature; (2) that the cause of action arose in Nome;
(3) inconvenience and expense to plaintiff and his witnesses;
(4) the residence of defendant at Nome, at the time of the
commencement of the action.

O. D. Cochran, of Nome, for plaintiff.

Wm. A. Holzheimer, of Ketchikan, in pro. per.

LOMEN, District Judge.  In view of the grounds on which
defendant's motion is based, we deem the objections raised by
plaintiff not well taken.  The first objection is contrary to law;
the second is immaterial; the third is not controlling, if, in-
deed, it is material; and the fourth is of doubtful materiality,
and based upon debatable facts.

We say that the plaintiff's third objection is not controlling,
for the reason that, while he had a right at his option to
bring this action in any one of the four divisions of Alaska,
this right was subject to the statutory privilege of the defend-
ant to move for a change of venue.   Again, it may be argued
that the terms "unnecessary expense" and "inconvenience"
are relative.  They are not, so far as the statute contemplates,
relative as between the parties, but relative with reference to
the defendant's interests, and in respect to the place where

the action was brought, as compared with the place to which it is sought to be transferred.

Section 365 of the Compiled Laws of the Territory of Alaska reads as follows:

"The jurisdiction of each division of the court shall extend over the district of Alaska, but the court in which the action is pending may, on motion, change the place of trial in any action, civil or criminal, from one place to another place in the same division or to a .designated place in another division in either of the following cases:

"First. When there is reason to believe that an impartial trial cannot be had therein;

"Second. When the convenience of witnesses and the ends of justice would be promoted by the change;

"Third. When from any cause the judge is disqualified from acting; but in such event, if the judge of another division will appear and try the action, no change of place of trial must be made;

"Fourth. By the court, on its own motion, when, considering available means of travel, it appears that the defendant will be put to unnecessary expense and inconvenience if summoned to defend in the place or division in which the action has been commenced; and when it appears to the satisfaction of the court, or judge thereof, that an action has been commenced in a place or division remote from the residence of the defendant for the purpose of causing unnecessary expense or inconvenience, the place of trial shall be changed at the cost of the plaintiff, and such costs shall not be recovered from the defendant.

"In any criminal prosecution the court shall change the place of trial where it appears to the satisfaction of the court that the defendant will not be prejudiced thereby and that the United States will be put to unnecessary expense in such criminal prosecution if the transfer is not made."

The grounds on which the motion is based are the grounds specified in the fourth subdivision only of said statute.

It will be noticed that the first clause of said subdivision makes no mention of the residence of either party, and that the court, in the case there mentioned, may on its own motion change the place of trial, and that, in the case mentioned in the second clause of said subdivision, the court shall change the place of trial, at the cost of plaintiff. This second clause, unlike the first, makes defendant's residence material. In this connection it is well to note that our statutes nowhere specify where transitory actions shall be commenced. The rule of the common law therefore obtains, except as limited by the above statute, which makes it optional with defendant,

in the cases mentioned, to cause the place of trial to be changed. It will be remembered that at common law transitory actions were to be brought in the county of defendant's domicile; the rule being, "Actor [plaintiff] sequitur forum rei—"rei," here, being the genitive of reus (defendant). This seems to have been the reason for the statute above, and, being remedial in its nature, the construction placed upon it should extend, rather than curtail, the remedy.

· What, then, are the facts with reference to the residence and domicile of the defendant? It is known to the court and sufficiently appears in the record that the defendant, at the time of his appointment as judge of this division, in 1917, resided at Ketchikan, and, under the statute, in order to qualify as judge, was compelled to, and did, take up his residence in Nome.

Section 363 of the Compiled Laws provides:

"There is hereby established a district court for the district of Alaska, with the jurisdiction of Circuit and District Courts of the United States and with general jurisdiction in civil, criminal, equity, and admiralty causes; and four district judges shall be appointed for the district, each at an annual salary of seven thousand five hundred dollars, who shall during their terms of office reside in the divisions of the district to which they may be respectively assigned by the President."

It is equally well known that the defendant's term of office expired on November 1, 1921; that before he left this division, November 12, 1921, his family had preceded him to Seattle, and that he had shipped his household goods and personal effects; and that between the dates last above mentioned this action was commenced.

Unless it be shown to the contrary, the character of defendant's residence in Nome became what the statute contemplated, to wit, a residence for a definite period and during his term, and the same was not necessarily an abandonment of his domicile at Ketchikan. In re Green (C. C.) 5 Fed. 145, it is said the latter is presumed to continue until it is shown to have been changed, and the burden of proving such change is upon the party alleging it.

The word "domicile" was defined by the Supreme Court of the United States in Mitchell v. United States, 21 Wall. 352, 22 L. Ed. 584:

" 'Domicile' has been thus defined: 'A residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.' * * * By the term 'domicile,' in its ordinary acceptation, is meant the place where a person lives and has his home. The place where a person lives is taken to be his domicile until facts adduced establish the contrary. * * * A domicile, once acquired, is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute a new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject."

The word "residence" is to be distinguished from the word "domicile." One is actual; the other, legal. Bouvier draws the distinction as follows:

"A residence is different from a domicile, although it is a matter of great importance in determining the place of domicile. The essential distinction between residence and domicile is that the first involves the intent to leave when the purpose for which one has taken up his abode ceases. The other has no such intent; the abiding is animo manendi. One may seek a place for the purposes of pleasure, of business, or of health. If his intent be to remain, it becomes his domicile; if his intent be to leave as soon as his purpose is accomplished, it is his residence. Brisenden v. Chamberlain [C. C.] 53 Fed. 311."

The constitutional (or statutory) direction that a district judge shall reside within his district was not intended for his convenience, but for the benefit of the people whose servant he is. In this case "reside" will be held to mean an *actual* as distinguished from a *legal* or constructive residence or domicile. People v. Owers, 29 Colo. 535, 69 Pac. 515; In re Green (C. C.) 5 Fed. 145.

But it is argued by plaintiff that defendant qualified as a voter and voted in Nome, and for that purpose made the affidavit required for registration in the following form:

"United States of America, Territory of Alaska, City of Nome—ss.:

"I, W. A. Holzheimer, do solemnly swear (or affirm) that I am over twenty years eleven months and twenty days of age; that I am a citizen of the United States by birth; that I have been a bona fide

resident of the territory of Alaska for eleven months and twenty days last past, and of the town of Nome, Alaska, for five months and twenty days last past; or that I am a bona fide resident of the Nome, Alaska, school district.                     Wm. A. Holzheimer."
"Subscribed and sworn to before me this 28th day of Feb., 1920.
                              "E. Grimm, City Clerk."

Another affidavit, same as above, except subscribed and sworn to on the 7th day of March, 1921.

Under these circumstances the plaintiff confidently relies upon the case of Shelton v. Tiffin, 6 How. (47 U. S.) 163, 173, 12 L. Ed. 387, as authority to the effect that voting established defendant's domicile. We quote from the opinion on page 185 of 6 How. (12 L. Ed. 387):

"There is no proof that he has voted at any election in Louisiana, or served on a jury. * * * On a change of domicile from one state to another, citizenship may depend upon the intention of the individual. But this intention may be shown more satisfactorily by acts than declarations. An exercise of the right of suffrage is conclusive on the subject; but acquiring a right of suffrage, accompanied by acts which show a permanent location, unexplained, may be sufficient."

To the extent that the court in the above case held that "an exercise of the right of suffrage is conclusive on the subject" of citizenship, and hence on the subject of domicile, the court went too far, and its declaration in this respect was not necessary to the decision. It was consequently obiter, and does not possess the dignity of an authority. Justice McLean writing the opinion expressly finds that the party in question had not voted.

But this criticism is not ours alone. The flaw was detected and commented on in Gaddie v. Mann (C. C.) 147 Fed. 955, where District Judge Speer, writing the opinion, at page 957 says:

"It is true that in Shelton v. Tiffin, 6 How. 185, 12 L. Ed. 387, Mr. Justice McLean said that, on a change of domicile from one state to another, 'an exercise of the right of suffrage is conclusive on the subject'; but the learned Associate Justice disclosed in his opinion that there was no proof that the party ever voted in any election in Louisiana, and this subject of suffrage, not being before the court for decision, the language quoted is merely a dictum. To the contrary, while recognizing the fact of suffrage as an important factor in determining the question, many authorities are to the effect that it is not conclusive."

So, Shiras, J., in Woodworth v. St. Paul, etc., Ry. Co. (C. C.) 18 Fed. 282, submitted to the jury the question of plaintiff's citizenship in Minnesota, notwithstanding evidence that he had only voted in Maine.

And in Easterly v. Goodwin, 35 Conn. 279, 95 Am. Dec. 237, Park J., said:

"A temporary residence does not change its character by lapse of time. * * * No doubt the length of time the plaintiff remained in California, and his exercise of the elective franchise while there, were important facts upon the question of citizenship, and, unless controlled by other evidence of a superior character, would have been sufficient to warrant the court in finding that he was a citizen of that state" (which it did not).

The cases of diverse citizenship for the purpose of giving a federal court jurisdiction are to be distinguished from the present motion. In the former the residence involved is jurisdictional, and involves the citizenship of the parties in different states. In the case at bar no citizenship is involved, and it is conceded that defendant's residence is now, and for many years has been, in Alaska. It may well be that, under these circumstances, the defendant having a legal residence or domicile in Ketchikan, Alaska, and an actual residence in Nome, was entitled to vote in the latter place without thereby forfeiting his domicile. See Wood v. Fitzgerald, 3 Or. 583.

Chapter 14, Laws of Alaska 1919, provides that the voter, at municipal and school elections, for which the defendant qualified, must have a "bona fide residence" in Alaska for one year and in the municipality six months.

Curiously enough, the defendant's attempted qualification as a voter in Nome would prove abortive under said chapter 14, Laws of 1919, unless it was made at least 10 days prior to election, a fact not shown, though probably the case. The affidavits of defendant, exhibited by plaintiff, disclose only a residence in the territory of 11 months and 20 days, and in the municipality of 5 months and 20 days. Even affiant's age is given as over 20 years, 11 months, and 20 days.

However, might not defendant have qualified by showing a legal residence within the territory, and an actual residence within the municipality during the requisite lengths of time? One residence was as bona fide as the other. It would seem harsh to hold otherwise, and thus deprive defendant of his

vote, altogether. By reason of its remoteness, it would be im-
practicable for him to vote at his domicile during his term of
office. Neither the statute requiring the judge to reside in his
division during his term of office nor chapter 14, Laws of
1919, were intended to work such result.

But, so far as the question of defendant's intention and
residence is concerned, the fact always remains that defend-
ant did come from his home in Ketchikan to Nome, for a
definite official purpose, and for a definite term, and that at
the expiration of said term he returned to his domicile at
Ketchikan. His acts speak louder than his declarations, while
his corresponding intentions are also revealed in his affidavit in
support of the motion.

In the case of Livingston v. Maryland Ins. Co., 7 Cranch,
506, 3 L. Ed. 421, in considering the question of domicile the
court said:

"The trade in which he is engaged, the family that he possesses,
and the transitory or fixed character of his business, are ingredi-
ents which may properly be weighed in deciding on the nature of
an equivocal residence or domicile. But when once that domicile is
fixed and ascertained, all other circumstances become immaterial."

In the light of such considerations, it appears that, because
the defendant's term of office was definite, the taking up of
a residence to qualify for the office was also for a definite term,
and such residence implied no intentions to remain indefinite-
ly or permanently, which is necessary to a change of domicile.
Again, defendant's return to his former domicile on the ex-
piration of the term of his office would seem to put to rest the
question of the intention and render "all other circumstances
immaterial."

Did defendant as a matter of fact at any time have the
animus manendi during his residence in Nome? We do not
think the facts warrant any such conclusion, and defendant dis-
claims any such intention. Did not defendant's actual resi-
dence terminate with his term of office, and attach to his
domicile before the commencement of this action? Was he
not, then, a mere sojourner in Nome? In Miller's Estate, 3
Rawle (Pa.) 319, 24 Am. Dec. 349, it was said that "residence
* * * is abandoned for every purpose of legal effect the
instant a step is taken to abandon the country." Had not de-

fendant, at the time of the service of the summons on him, taken several steps to abandon Nome?

But, as we have already said, the question of residence is not determinative of the defendant's rights when, "considering available means of travel, it appears that the defendant will be put to unnecessary expense and inconvenience if summoned to defend" in Nome. Can it be argued that the statute does not apply to the defendant's case, because of the service of the summons on him in Nome on the eve of his departure? Would it not rather aggravate the defendant's case, if on account of such service he should be compelled to remain? Would not the expense and inconvenience then be the greater? The service on the defendant did not prevent his departure, but it will necessitate his return, unless the place of trial be changed. The spirit of the statute would seem to cover the situation of defendant in one case as much as in the other. The service of the summons, if made at Ketchikan, would have been as efficacious as if served at Nome. On what theory was the service at Nome more efficacious? The plaintiff could not profit by it, and the defendant's expense and inconvenience would seem to be the same. The difficulty to be overcome is not the place of service, but the venue laid in the action. The place of the service of summons did not affect defendant's rights to move for a change of the place of trial. No matter where served, defendant would be summoned to defend at Nome, where the venue was laid and the action was commenced.

"The right of a person to be sued at his own domicile is not a technical one, but one of importance, and should not be taken away except in strict compliance with law." Per Campbell, J., in Jacobson v. Hosmer, 76 Mich. 234, 42 N. W. 1110, cited in 40 Cyc. p. 97.

In cases of ambiguous domicile, the presumption attaches in favor of the continuance of the former domicile. Ausbacher v. De Nevue, 45 La. Ann. 988, 13 South. 396.

" 'Residence,' within the statute providing for the place of trial, depends on intention as well as fact, * * * the fixed home of a party as understood by himself and his neighbors and friends." Younger v. Spreckles, 12 Cal. App. 175, 106 Pac. 895.

This we find to be at Ketchikan.

6 A.R.—44

We further find that defendant would be put to unnecessary expense and inconvenience, if summoned to defend this case at Nome; but we do not find that the action was commenced at Nome, or in this judicial division, "for the purpose of causing" such expense or inconvenience. Motion granted.

Let an order, therefore, be prepared, changing the place of the trial of said action from this division to the First division of the district court, sitting at Ketchikan, the costs to abide the result of said action, and let such order provide for the transmittal by the clerk of this court of all records and files in said case, or exemplified copies thereof, or both, under the rules in such cases made and provided.

⬤➞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes