**(107 So. 708)**

**No. 27736.**

**Interdiction of LEPINE.**

**In re LEPINE et al.**

(March 1, 1926.  Rehearing Denied March 29, 1926.)

*(Syllabus by Editorial Staff.)*

Insane persons ⬤⟹8—District court of parish in which woman resided held to have jurisdiction of suit to interdict her, though her husband had his domicile elsewhere (Civ. Code, arts. 39, 41, 42, 392;  Code Prac. arts. 162, 167, 168).

District court in particular parish *held* to have jurisdiction, under Civ. Code, arts. 39, 392, and Code Practice, art. 162, of suit to interdict woman residing in that parish, but whose husband had his domicile elsewhere, in view of Civ. Code, arts. 41, 42, and Code Prac. arts. 167, 168.

In the matter of the interdiction of Maud Lepine, wife of Joseph L. Boudreaux, wherein Joseph L. Boudreaux intervened and joined with the curator appointed in excepting to the jurisdiction of the court.  To review an order overruling a plea to the jurisdiction, Maud Lepine, by her curator, and Joseph L. Boudreaux, apply for writs of certiorari and prohibition.  Writs denied, and order overruling plea affirmed.

Augustus G. Williams and Irwin F. Williams, both of New Orleans, and Clarence J. Bourg, of Thibodaux, for relators.

Harvey Peltier, of Thibodaux, and Delvaille H. Thead, of New Orleans, for respondent.

O'NIELL, C. J.  The question in this case is whether the district court in Lafourche parish has jurisdiction of a suit to interdict a woman residing in that parish, but whose husband has his domicile elsewhere.  She was born in Lafourche parish 25 years ago, and has resided there, with her parents, ever since.  She was never of sound mind, according to the testimony of her brother, which is not denied; but that, of course, relates to the merits of the case, which has not been tried.

On the 8th of June, last year, Miss Maud Lepine, defendant in this interdiction suit, went to New Orleans, and there, without the consent or knowledge of her parents, and very much to their sorrow, married one Joseph L. Boudreaux, whose domicile was in New Orleans.  She did not go to Boudreaux's place of residence or establish a matrimonial domicile in New Orleans.  That evening, a few hours after the ceremony, Boudreaux called up his wife's mother, at a hotel in New Orleans, and told her of the marriage.  She requested Boudreaux to bring her daughter to the hotel and talk over the matter.  He consented, and, with a man and woman who had served as witnesses at the marriage, he took his wife over to the hotel to greet her mother.  The mother requested that her husband, who was at the hotel, be not informed of his daughter's marriage, because he was ill and she feared that he would be so shocked that his life would be endangered.  She requested also that Boudreaux allow her daughter to remain with her that night and call for her in the morning.  He consented but when he called at the hotel in the morning he was informed by the hotel clerk that the Lepines had checked out.  Surmising that they had taken his wife back to Lafourche parish in their automobile, via the Walnut Street ferry, he drove immediately to the ferry landing, where he overtook the Lepine car awaiting the ferry.  In the car were his wife and her mother and father and brother, and a friend of the family from Lafourche parish.  They forbade Boudreaux to communicate with his wife, and persuaded him, under promise that he might see her later, to allow her to return with them to her home in Lafourche.  Six weeks later her parents and brother filed this suit in Lafourche parish to have her interdicted.  She did not answer or file a plea to the suit, but the curator appointed to repre-

sent her excepted to the jurisdiction of the court, and Boudreaux intervened and joined in the plea. Having heard evidence on the plea, the judge overruled it, and the curator and Boudreaux are applying for writs of certiorari and prohibition.

The relators rely upon article 39 of the Civil Code, which declares that a married woman has no other domicile than that of her husband, and upon article 392, which declares that, in interdiction proceedings, the district judge at the domicile or residence of the person to be interdicted shall pronounce the interdiction. They rely also upon article 162 of the Code of Practice, which declares that, as a general rule, in civil proceedings, the suit must be brought at the domicile or residence of the defendant, and that no one is permitted to select a domicile other than the parish where he or she resides for the purpose of being sued there.

We agree with the learned counsel for relators that the words "domicile" and "residence" are used as if they were synonymous in article 392 of the Civil Code and in article 162 of the Code of Practice, but the words have not, essentially, the same meaning. The defendant in this interdiction suit has her domicile, technically speaking, within the jurisdiction of the civil district court for the parish of Orleans, because she has no other domicile than that of her husband; but she has never had a residence in the parish of Orleans. In such case, the suit could not be brought before both the court having jurisdiction over the domicile and the court having jurisdiction over the residence of the person to be interdicted, and it has been decided that, in such case, the suit should be brought at the place of residence of the person to be interdicted. We refer to the Interdiction of Dumas, 32 La. Ann. 679, from the syllabus of which decision we quote:

"A suit for interdiction must be brought at the actual domicile, the domicilium habitationis, of the defendant, not at his merely legal or constructive domicile."

The ruling of the district judge in this case is in accord with other provisions of the Civil Code and Code of Practice. Articles 41 and 42 of the Civil Code prescribe the method by which a person may change his or her domicile from one parish to another; that is, by actually residing in the other parish and by recording in the recorder's office in each parish a written declaration of intention to change the domicile from the one parish to the other. Article 168 of the Code of Practice declares that, if a person changes his residence from one parish to another without registering the declaration prescribed by article 42 of the Civil Code, he may, nevertheless, within the year, be sued in the parish to which he has moved, provided he has done there acts which manifest sufficiently his intention to establish his domicile there. The latter article does not, in terms, say that, within the year after the change of residence, and after the person changing his residence has done at his new place of abode acts which manifest his intention to establish his domicile there, he may yet be sued in the parish from which he has moved; but it has been so decided, and is in accord with articles 167 and 168. Berry v. Gaudy, 15 La. Ann. 533; King v. Watts, 23 La. Ann. 563; State ex rel. Egan v. Steele, 33 La. Ann. 912; Ausbacher & Co. v. De Nevue, 13 So. 396, 45 La. Ann. 988; Vallee v. Hunsberry, 32 So. 359, 108 La. 139. In Berry v. Gaudy, it was said:

"Where a party has removed from one parish into another, and has acted in the latter parish in such a manner as to manifest sufficiently his intention to change his domicile, but has not made a formal declaration to that effect, if a year has not elapsed since his removal, it is optional with a party desiring to sue him to bring the suit in either parish.

"If a person wishes to protect himself from being sued in the parish from which he removes, he should make an express declaration of his intention to change his domicile."

Miss Maud Lepine, of course, did not register a declaration of intention to change her domicile from Lafourche parish to the parish of Orleans, in the way prescribed by article 42 of the Civil Code, but, by marrying a man whose domicile was in the parish of Orleans she manifested her intention to adopt as her domicile, in a technical sense, his domicile, in the parish of Orleans. This suit to interdict her was brought within the year—exactly six weeks—after she changed her domicile. There is no provision in the Code of Practice or Civil Code that forbade her being sued in the parish where she theretofore resided, or requiring that the suit should be brought at the newly acquired domicile. It is not necessary to decide whether the suit might have been brought there, at the option of the plaintiffs. It is sufficient to say that the district court in and for the parish of Lafourche, where the defendant in this interdiction suit actually resides, has jurisdiction of the case.

The relief prayed for by the relators is denied, and the ruling of the district judge, overruling the plea to his jurisdiction, is affirmed, at the cost of the relators.